UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL ROSKOPF, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>PARK STERLING CORPORATION, JAMES CHERRY, LESLIE M. BAKER, KIM S. PRICE, LARRY CARROLL, BEN R. RUDISILL, THOMAS HENSON, JEAN E. DAVIS, PATRICIA C. HARTUNG, WALTER C. AYERS, JEFFREY KANE, GRANT S. GRAYSON, and ROBERT C. WHITTEN,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Michael Roskopf ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act Of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of Park Sterling Corporation ("Park Sterling" or the "Company") against Park Sterling's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2. On April 27, 2017, South State Corporation ("South State") and the Company

announced that they had entered into a definitive agreement ("Merger Agreement") under which South State will acquire all of the outstanding shares of Park Sterling in an all-stock transaction (the "Proposed Transaction"). If consummated, Park Sterling stockholders will receive 0.14 shares of South State stock for each share of Park Sterling stock that they own ("Exchange Ratio"). The Proposed Transaction was valued at approximately $691 million, based on the number shares of Park Sterling common stock outstanding on March 31, 2017 and on South State's April 26, 2017 closing stock price.

3. On July 14, 2017, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction. Specifically, as set forth herein, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Park Sterling's insiders' potential conflicts of interest; and (ii) the valuation analyses prepared by Stephens in connection with the rendering of its fairness opinion. The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed vote on the Proposed Transaction.

4. For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws in connection with the filing of materially deficient and misleading Registration Statement. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15

U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of Park Sterling common stock.

9. Defendant James Cherry ("Cherry") has served as Chief Executive Officer of the Company since its formation. He has served as a director since 2010.

10. Defendant Leslie M. Baker ("Baker") currently serves as Chairman of the Board of Directors and has been a director of the Company since 2010.

11. Defendant Kim S. Price ("Price") serves as Vice Chairman of the Board of Directors and has been a director of the Company since October 2012.

12. Defendant Larry Carroll ("Carroll") has been a director of the Company since 2006.

13. Defendant Ben R. Rudisill ("Rudisill") has been a director of the Company since October 2012.

14. Defendant Thomas Henson ("Henson") has been a director of the Company since 2006.

15. Defendant Jean E. Davis ("Davis") has been a director of the Company since March 2011.

16. Defendant Patricia C. Hartung ("Hartung") has been a director of the Company since November 2011.

17. Defendant Walter C. Ayers ("Ayers") has been a director of the Company since 2010.

18. Defendant Jeffrey Kane ("Kane") has been a director of the Company since 2010.

19. Defendant Grant S. Grayson ("Grayson") has been a director of the Company since 2016.

20. Defendant Robert C. Whitten ("Whitten") has been a director of the Company since 2016.

21. Defendants Cherry, Baker, Price, Carroll, Rudisill, Henson, Davis, Hartung, Ayers, Kane, Grayson, and Whitten are collectively referred to herein as the "Board" or the "Individual Defendants."

22. Defendant Park Sterling is a bank holding company incorporated under the laws of the State of North Carolina to serve as a one-bank holding company of Park Sterling Bank. The Company maintains its principal executive offices at 1043 E. Morehead Street, Suite 201, Charlotte, North Carolina 28204. Park Sterling's common stock is traded on the NASDAQ Global Select Market under the symbol "PSTB."

23. The Individual Defendants and Park Sterling are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

24. South State is a South Carolina corporation that provides a full range of retail and commercial banking services, mortgage lending services, trust and investment services, and consumer finance loans through financial centers in South Carolina, North Carolina, northeast Georgia and coastal Georgia.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action on behalf of all holders of Park Sterling stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

26. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

27. The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of March 31, 2017, Park Sterling had 53,112,726 shares of Park Sterling common stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

28. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

   a. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

   b. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

29. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

30. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which

could establish incompatible standards of conduct for Defendants.

32. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

34. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FACTUAL BACKGROUND

### Company Background

35. Park Sterling provides a full array of retail and commercial banking services, including wealth management and capital market activities, through 18 full-service branches in North Carolina, 23 full-service branches in South Carolina, nine full-service branches in Virginia and five full-service branches in northern Georgia. Specifically, Park Sterling maintains 19 branches in the Charlotte-Concord-Gastonia Metropolitan Statistical Area ("MSA") in North Carolina, 10 branches in the Greenville-Anderson-Mauldin MSA in South Carolina and 10 branches in the Richmond MSA in Virginia. Additionally, Park Sterling serves its communities through five branches in the Greenwood, South Carolina MSA, two each in the Spartanburg, South Carolina MSA and the Columbia, South Carolina MSA, and one each in the Newberry, South Carolina MSA, the Raleigh, North Carolina MSA, the Wilmington, North Carolina MSA and the Charleston-North Charleston, South Carolina MSA. Park Sterling's five northern Georgia branches are not located in an identified MSA. As of June 30, 2017, Park Sterling employed 532 people and had 511 full-time equivalent employees.

36. Since going public in 2010, Park Sterling has pursued a strategy of rapid growth and has consummated several strategic transactions, including the acquisitions of Community

6

Capital in November 2011, Citizens South in October 2012, Provident Community in May 2014, and First Capital in January 2016. The results of this growth strategy have reflected favorably on the Company's balance sheet. In fact, the most recent annual report, announced on March 10, 2017, revealed a rapidly growing regional bank. Net income rose to $19.9 million, or $0.38 per diluted common share, for the year ended December 31, 2016 compared to net income of $16.6 million, or $0.37 per diluted common share, for the year ended December 31, 2015. Excluding merger-related expenses and (loss)/gain on sale of securities, the Company's reported adjusted net income grew to $27.2 million, or $0.52 per diluted common share, for the year ended December 31, 2016 compared to adjusted net income of $17.8 million, or $0.40 per diluted common share, for the year ended December 31, 2015. Additionally, net interest income increased by $23.7 million for the year ended December 31, 2016 to $105 million representing a 29% increase from 2015. Finally, loan and loans held for sale grew by $673.4 million in 2016, total deposits rose by $561.1 million in 2016, and noninterest income grew by $3.2 million to $21.4 million in 2016, a 17% increase from 2015.

37. Despite the continued growth of the Company as an independent entity, the Board decided to merge with another bank through a sales process that barely tested the waters. Accordingly, it is vital that Park Sterling's stockholders receive all material information concerning the Proposed Transaction, so that they may make an informed vote on the Proposed Transaction.

**The Merger Process**

38. Park Sterling's board and members of its senior management team met with representatives of various investment banking firms, including Keefe, Bruyette & Woods ("KBW") and Stephens Inc., ("Stephens") regarding possible strategic acquisitions that might be attractive to Park Sterling. The nature and extent of these discussions is largely absent from the Registration Statement. In fact, the Registration Statement simply provides that in February and March 2016, representatives of Stephens and KBW, on separate occasions, discussed with members of Park Sterling management a possible business combination, including a potential

7

business combination with South State, which each of Stephens and KBW identified as having the financial capacity and strategic fit to pursue a potential transaction with Park Sterling.

39. Around this same time period, in February 2016, South State executives reached out to Defendant Cherry, Park Sterling's Chief Executive Officer, regarding South State's interest in exploring a combination of South State and Park Sterling. Preliminary discussions between the two entities ensued, and in early May 2016, Park Sterling formally engaged Stephens as its financial advisor. For reasons not disclosed in the Registration Statement, these discussions were briefly put on hold in May 2016 with the understanding that they would remain in touch in the future.

40. Discussions between the two parties resumed on February 1, 2017, and shortly thereafter, the parties proceeded to exchange preliminary due diligence information via an electronic data room from February 3 through February 26, 2017.

41. On February 27, 2017, South State submitted a non-binding indication of interest to acquire Park Sterling at a proposed exchange ratio of 0.14 shares of South State common stock for each share of Park Sterling common stock. The 0.14 exchange ratio represented an implied offer of $12.62 per share of Park Sterling common stock.

42. Park Sterling's board held a special telephonic meeting to discuss South State's non-binding indication of interest on March 1, 2017. Following a thorough discussion of the current status of negotiations between the parties, and in spite of the fact that Stephens informed the that there were other viable parties interested in and capable of acquiring Park Sterling, the Board directed management to hold further discussions and continue due diligence with South State.

43. On March 21 and March 22, 2017, the Park Sterling board of directors held its regular annual strategic planning board meeting. Topics of discussion included the attractiveness of South State as a potential strategic partner and the challenges of continuing to improve returns and to grow the company in the future in light of the consolidation of community banks taking place in Park Sterling's markets.

44. One week later, on March 29, 2017, the Board reconvened to finalize their review of the South State non-binding indication of interest, and concluded that a combination with South State on the terms set forth in the non-binding indication of interest represented a compelling offer, and charged Park Sterling management to continue discussions and due diligence with South State.

45. Throughout March and April 2017, due diligence between the parties continued as Members of senior management of each party held periodic discussions regarding the price and terms of a potential strategic transaction, and each party exchanged materials and information and scheduled meetings to facilitate mutual due diligence. Additionally, the parties' respective representatives exchanged several drafts of the merger agreement and related transaction documents, and discussed and negotiated the terms and conditions set forth in the merger agreement and related transaction documents.

46. On April 26, 2017, the Board met to discuss the terms of the final draft of the merger agreement that contemplated a transaction in which the holders of Park Sterling common stock would receive 0.14 shares of South State common stock per share of Park Sterling common stock. During this meeting, Stephens delivered its fairness opinion and, following discussions with financial and legal advisors and members of Park Sterling's senior management, the Board voted to approve the Merger.

47. Following the meeting, the Merger Agreement was executed by South State and Park Sterling and the voting agreements were executed by South State and certain Park Sterling shareholders. The following morning, on April 27, 2017, the parties issued a joint press release announcing the merger.

**The Proposed Transaction**

48. On April 27, 2017, Park Sterling and South State issued a joint press release announcing the Proposed Transaction as follows:

> **COLUMBIA, SC & CHARLOTTE, NC** - (April 27, 2017) — South State Corporation (NASDAQ:SSB) and Park Sterling Corporation (NASDAQ:PSTB) jointly announced today the signing of a definitive merger agreement. Combining

9

Case 3:17-cv-00483-GCM     Document 1     Filed 08/14/17     Page 9 of 19

the two companies will create a $14.5 billion in assets franchise operating throughout the Carolinas, Virginia and Georgia.

Headquartered in Charlotte, North Carolina, Park Sterling Corporation is the holding company for Park Sterling Bank, which has over 50 branches across NC, SC, VA and GA. This opportunity will allow for a deeper and denser market presence across the Southeast, a more robust commercial business strategy, a greater presence in Charlotte and entry into the Richmond market.

"Our partnership with Park Sterling is a natural next step. We both have a common vision for building a quality regional bank in the Southeast, and this is a significant step forward in accomplishing that goal," said Robert R. Hill, Jr., CEO South State Corporation. "We are fortunate to have two great teams that operate in dynamic markets and we are excited about the opportunities this merger creates."

As of March 31, 2017, Park Sterling Corporation had approximately $3.3 billion in assets, $2.5 billion in deposits and $2.5 billion in loans. Upon completion of the transaction, the combined company will have approximately $14.5 billion in assets, $11.5 billion in deposits and $10.4 billion in loans.

"Our team is proud to be partnering with South State to create what we believe will come to be recognized as the preeminent regional community banking franchise in the Southeast," said James C. Cherry, CEO of Park Sterling Corporation. "This combination will substantially fulfill our vision of truly becoming big enough to have the talent and services necessary to help customers achieve their financial aspirations while still remaining small enough and passionate enough to care that they do."

The merger agreement has been unanimously approved by the board of directors of each company. Pending regulatory and shareholder approvals and other customary closing conditions, the closing is anticipated to occur in the fourth quarter of 2017 and the system conversion is scheduled to occur in the first quarter of 2018. At closing, Park Sterling Corporation will be merged into South State Corporation, and Park Sterling's bank subsidiary, Park Sterling Bank, will be merged into South State's bank subsidiary, South State Bank.

Upon consummation of the merger, Cherry will be appointed to the combined company's board of directors in addition to another individual to be mutually agreed upon and named at a later date.

Under the terms of the agreement, shareholders of Park Sterling Corporation will receive 0.14 shares of South State common stock for each share of Park Sterling common stock. The aggregate consideration is valued at approximately $690.8 million in the aggregate, based on 53,112,726 shares of Park Sterling common stock outstanding as of March 31, 2017 and on South State's April 26, 2017 closing stock price of $91.90.

**The Registration Statement Misstates and/or Omits Material Information**

49. On July 14, 2017, Defendants filed, or caused to be filed, a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Park Sterling stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

50. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Park Sterling's insiders' potential conflicts of interest; and (ii) the valuation analyses prepared by Stephens in connection with the rendering of its fairness opinion. Accordingly, Park Sterling stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Insiders' Potential Conflicts of Interest*

51. The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Park Sterling's management and the Board.

52. The Registration Statement states that, following the closing of the merger, two directors currently serving as Park Sterling directors will be appointed to the board of directors of each of South State and South State Bank. Specifically, the Registration statement notes that:

> Immediately following the effective time, South State will appoint James C. Cherry, Park Sterling's current Chief Executive Officer, and one current non-employee member of the board of directors of Park Sterling to the South State board of directors. South State Bank will also appoint Mr. Cherry and such other Park Sterling director to its board of directors. Mr. Cherry and the other Park Sterling director will serve on the board of directors of each of South State and South State Bank until the next annual meeting of shareholders of such company, at which time Mr. Cherry will be considered in good faith for nomination to a new term on the board of directors of each of South State and South State Bank. Additionally, Mr. Cherry will be appointed to the Executive Committee of the South State board of directors, where he will serve for a period of one year from the date of his appointment. Mr. Cherry and the other Park Sterling director appointed to South State's board of directors will participate in South State's director compensation

program, the current terms of which are set forth in South State's annual Registration Statement that was filed with the Securities and Exchange Commission on March 6, 2017.

Registration Statement at 84. This arrangement is restated in the press release announcing the merger wherein it is stated that "[u]pon consummation of the merger, Cherry will be appointed to the combined company's board of directors in addition to another individual to be mutually agreed upon and named at a later date." However, the Registration Statement fails to disclose the timing and nature of the key communications regarding the future composition of the South State Board.

53. Moreover, in connection with the execution of the merger agreement, South State Bank entered into a Consulting Agreement with Defendant Cherry as well as Replacement Agreements with certain members of Park Sterling's management team. The Consulting Agreement and the Replacement Agreements will become effective upon the closing of the merger and will be void if the merger is not consummated. However, the Registration Statement fails to disclose the timing and nature of the key communications regarding the future employment and/or benefits relating to Park Sterling management, including who participated in such communications and when South State first expressed its interest in retaining members of Park Sterling management following the merger.

54. Communications regarding post-transaction employment, board membership and other financial opportunities for insiders that coincide with the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; and (ii) "Interests of Park Sterling's Directors and Executive Officers in the Merger."

***Material Omissions Concerning Stephens' Financial Analyses***

56. The Registration Statement describes Stephens' fairness opinion and the various valuation analyses it performed in support of its opinions. However, the description of Stephens' fairness opinion and the underlying analyses omits key inputs and assumptions underlying these analyses. Without this information, as described below, Park Sterling's public stockholders are unable to fully understand these analyses and, thus, are being misled as to what weight, if any, to place on Stephens' fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Park Sterling stockholders.

57. Specifically, the Registration Statement fails to disclose various material elements of the financial analyses performed by Stephens. For example, Stephens performed a *Discounted Cash Flow Analysis,* which was presented to the Board. In this analysis, Stephens used financial forecasts and projections relating to the earnings and assets of Park Sterling prepared, and provided to Stephens, by Park Sterling management, and assumed discount rates ranging from 11.0% to 15.0%. Stephens calculated a range of equity values for Park Sterling were by adding (i) the present value of the estimated free cash flows that Park Sterling could generate over the period from 2018 to 2021 as a standalone company, and (ii) the present value of Park Sterling's implied terminal value at the end of such period. However the Registration Statement fails to disclose a significant portion of the values that served as a central piece in the preparation of this analysis. In fact, no values are provided for: (i) the projected free cash flows that Park Sterling was estimated to generate over the period from 2018 to 2021 as a standalone company; (ii) the present value of Park Sterling's implied terminal value at the end of such period; and (iii) the basis for Stephens' decision to apply discount rates ranging from 11.0% to 15.0%, and the inputs used to calculate these rates.

58. The absence of this information is made all the more troubling by the almost complete lack of any disclosed projected financial information. The Registration Statement notes that Stephens used financial forecasts and projections relating to the earnings and assets of Park Sterling prepared, and provided to Stephens, by Park Sterling management. However, with regard to Park Sterling's Prospective Financial Information the Registration Statement simply states:

13

***Certain Projections Regarding Park Sterling***

Park Sterling provided South State, KBW and Stephens with an estimated EPS (prior to anticipated cost savings) of $0.59 of Park Sterling for fiscal year 2017. Park Sterling's estimates were the same as the consensus "street estimates" published by FactSet Research Systems for the period. KBW then used an assumed annual EPS growth rate of 5.0% for fiscal years 2018 through 2023 at the direction of South State management. In addition, South State provided KBW with estimates of total assets as of December 31, 2017 for Park Sterling of $3.42 billion, which reflected Park Sterling's total assets of $3.31 billion as of March 31, 2017, extrapolated based on an annual growth rate of 5.0% assumed by KBW at the direction of South State management. KBW then estimated at the direction of South State management the value of Park Sterling's total assets as of December 31, 2018 through 2023, which reflected an assumed year-over-year annual growth rate of 5.0%.

59. Furthermore, in addition to Stephens' *Discounted Cash Flow Analysis*, the Registration Statement also provides the results of a similar discounted cash flow ("DCF") analysis that was performed by KBW, South State's financial advisor. KBW's DCF analysis resulted in a range of implied values per share of Park Sterling common stock of $12.12 per share to $16.53 per share, well in excess of the $9.69 per share to $13.53 per share range that was calculated by Stephens. Accordingly, the omission of the above referenced material information misleads stockholders as to the import and reliability of these two analyses, because it is essentially impossible for Park Sterling stockholders to reconcile the discrepancy between these two analyses and/or gauge the accuracy and reliability of Stephens' *Discounted Cash Flow Analysis*, or determine the extent to which they can reasonably rely on either of these fairness opinions or their underlying analyses.

60. Beyond the material misstatements and omissions contained in the Registration Statement with regard to Stephens' *Discounted Cash Flow Analysis*, Stephens also performed a *Selected Public Companies Analysis*, which was presented to the Board. The Registration Statement omits the observed multiples for each of the selected comparable companies selected by Stephens, as well as any benchmarking analyses Stephens performed for Park Sterling in relation to the target companies.

61. Similarly, Stephens also performed a *Selected Transactions Analysis,* which was

14

also presented to the Board. Again, the Registration Statement fails to disclose the observed multiples for each of the selected transactions analyzed by Stephens, as well as the financial performance metrics for the selected companies.

62. When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses is required for stockholders to understand and evaluate the reliability of such opinions. Furthermore, the disclosure of projected financial information provides stockholders with a basis to evaluate the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Park Sterling stockholders are to make a properly informed decision.

63. Without such undisclosed information, Park Sterling stockholders cannot evaluate for themselves whether the financial analyses performed by Stephens was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omitted information identified above is required in order to render the Registration Statement not misleading and ensure that stockholders can fully evaluate the extent to which the financial advisors' opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

64. The omission of this information renders the following sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Opinion of Park Sterling's Financial Advisor"" and "Certain South State and Park Sterling Unaudited Prospective Financial Information."

65. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event

that it is consummated and to recover damages resulting from Defendants' misconduct.

## FIRST CAUSE OF ACTION
### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

66. Plaintiff repeats and realleges each allegation set forth herein.

67. As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

68. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Park Sterling.

69. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

70. The omissions and false and misleading statements in the Registration Statement

are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

71. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

72. Plaintiff repeats and realleges each allegation set forth herein.

73. The Individual Defendants acted as controlling persons of Park Sterling within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Park Sterling and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

74. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

75. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue

17

contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

76. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

77. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

    A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as class counsel;

    B.    Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the best available terms for shareholders;

    C.    Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

    D.    Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E. Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: August 14, 2017

/s/Janet Ward Black
Janet Ward Black
NC State Bar 12869
Nancy R. Meyers
NC State Bar 23339
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC 27401
Tel.: (336) 333-2244
Fax: (336) 379-9415
jwblack@wardblacklaw.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY LLP**

By: /s/ *Donald J. Enright*
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Attorneys for Plaintiff and the Proposed Class*

19